# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. ANTONIO L. SAULSBERRY

**Appeal from the Criminal Court for Shelby County**
**No. 95-07822      Lee V. Coffee, Judge**

**No. W2010-01326-CCA-R3-CD  - Filed April 7, 2011**

The defendant, Antonio L. Saulsberry, was convicted by a Shelby County Criminal Court jury of murder during the perpetration of a robbery and murder during the perpetration of a burglary.  His convictions were merged and he was sentenced to life imprisonment, to be served consecutively to prior convictions for especially aggravated robbery and conspiracy to commit aggravated robbery for which he had already been sentenced to an effective term of fifty years as a Range II offender.  On appeal, the defendant challenges the sufficiency of the convicting evidence.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee, for the appellant, Antonio L. Saulsberry.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Bobby Carter and Jennifer Nichols, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was originally convicted of first degree premeditated murder, especially aggravated robbery, and conspiracy to commit aggravated robbery related to his involvement in the robbery of a T.G.I. Friday's restaurant in Memphis and the murder of the store manager, Gene Frieling.  See State v. Antonio L. Saulsberry and Franklin C. Howard, No. 02C01-9710-CR-00406, 1998 WL 892281, at *1 (Tenn. Crim. App. Dec. 21, 1998),

rev'd State v. Howard, 30 S.W.3d 271 (Tenn. 2000).  A total of five criminal actors were involved to some capacity in the offense; namely, Claude Sharkey, Clashaun ("Shaun") Sharkey, Franklin Howard, Kevin Wilson, and the defendant.  See id. at *2.  On direct appeal, this court reversed the defendant's first degree premeditated murder conviction based on insufficiency of the evidence, affirmed his remaining two convictions, and remanded for retrial on the felony murder indictments.[1]

It appears that the defendant did not seek supreme court review of the convictions that this court had affirmed.  See Antonio L. Saulsberry v. State, No. W2002-02538-CCA-R3-PC, 2004 WL 239767, at *1 (Tenn. Crim. App. Feb. 9, 2004), perm. to appeal denied (Tenn. June 1, 2004).  However, he subsequently filed a petition for post-conviction relief from his convictions for especially aggravated robbery and conspiracy to commit aggravated robbery on the ground that he received the ineffective assistance of counsel.  See id.  His petition was denied, and on appeal, this court dismissed the appeal after concluding that his petition was not timely filed.  See id.  The supreme court denied his application for permission to appeal.  See id.

Thereafter, the defendant sought interlocutory review as to whether a new trial on the felony murder charges would violate principles of double jeopardy.  State v. Antonio Saulsberry, No. W2005-00316-CCA-R9-CD, 2006 WL 2596771, at *1 (Tenn. Crim. App. Sept. 11, 2006), perm. to appeal denied (Tenn. Jan. 29, 2007).  This court held that the defendant could be tried for felony murder, and the Tennessee Supreme Court denied his application for permission to appeal.  See id.

At the defendant's new trial, Ann Frieling, the victim's mother, identified a photograph of the victim and said that he was the manager of a T.G.I. Friday's in Memphis at the time of his death.

John Wong's sworn testimony from the defendant's previous trial was read to the jury.  Wong testified that he worked as a dishwasher at T.G.I. Friday's in January 1995 and had been trained for the position by the defendant.  Wong was working the late shift the night of the 27th and early morning of the 28th and had opened the back door to take the trash out after the restaurant closed around 1:00 a.m.  He used a broom to keep the door from closing and locking behind him, as was his normal practice.

---

[1] The record indicates that the defendant had also been indicted on charges of murder committed during the perpetration of a robbery and murder committed during the perpetration of a burglary, see Tenn. Code Ann. § 39-13-202(a)(2); however, the jury had been instructed not to render verdicts on the felony murder charges once it found the defendant guilty of first degree premeditated murder.

As Wong was taking the second trash bin outside, he was accosted by four men, at least two of whom were armed. The men forced their way inside the restaurant, while repeatedly threatening to shoot him. Wong and another employee, Jessica Hoard, were ordered to the floor. Wong heard the men demand someone to open the safe, the person respond, "'[T]ake it, take it, take it,'" and then heard gunfire. Wong surmised that the first gunshot he heard sounded as if it was not fired from the same gun that fired subsequent shots. Wong heard the footsteps of people running and someone crying out for help. He got up and went to the office where he found that the manager, Frieling, had been shot, along with another employee, bartender, Preston Shea. Wong attempted to help Frieling, and Shea managed to call 911.

Jessica Hoard testified that she was working the closing shift as a waitress at the T.G.I. Friday's the night of the incident. She said that the defendant was employed as a cook at the restaurant, but he was not working that night. Hoard recalled that around 1:45 a.m., she had finished her duties and was waiting in the dining room for Frieling. Suddenly, Hoard saw a man in dark clothes and a ski mask appear in the doorway leading to the kitchen. The man was armed with a silver gun, which she described as not a revolver. He motioned for Hoard to follow him, and she was led to the back and ordered to lie on the floor or she would be shot. Hoard could not see anything, but she heard "lots of voices screaming, people asking for the money, and [she] heard shots[.]"

After some time passed and the four perpetrators had left the restaurant, Wong got up and discovered Frieling on the floor in the office. Hoard got up to help Wong make Frieling more comfortable, but Frieling died a few seconds later. The bartender, Preston Shea, was lying on the floor in the office, wounded as well. Hoard, like Wong, testified that it was common practice for the staff to prop the back door open after closing to facilitate taking out the trash and other tasks.

William Preston Shea, head bartender at the T.G.I. Friday's at the time of the incident, testified that he counted his cash register and took Frieling the money that had been earned at the bar during his shift. When he opened the door to exit Frieling's office, Shea was confronted by armed and masked men. They hit him in the back of the head with a heavy object, and he fell to the floor. The men demanded money, and Shea gave them his wallet. However, the men entered the office and demanded the money bags from Frieling. Shea heard Frieling cooperate with the robbers, but then he heard one of the men say, "Shoot the mother fucker," and heard a shot fired. Shea knew that Frieling had been shot. As the men ran out the door, they shot Shea three times. Shea crawled into the office and called 911.

Anthony Morgan's sworn testimony from the defendant's previous trial was read to the jury. Morgan testified that he was at Claude and Clashaun Sharkey's house around

11:30 a.m. on January 28, 1995, along with Kevin Wilson and Franklin Howard. The other men were acting normal, until a news report came on the television regarding the robbery and murder at the restaurant when they "ran towards the TV, all excited, watching it like they probably knew something, somebody."

Morgan testified that the next day, he went to the Mall of Memphis with the same four men and Sharita Taylor. While at the mall, the men saw the defendant and his brother, and Claude Sharkey and the defendant "had a little change of words." Morgan recalled that the defendant "asked Claude about some money . . . told him he owed him some money or something." The defendant was acting like Sharkey "owed him some money so bad." Sharkey gave the defendant fifty dollars, but the defendant was not happy and told Sharkey "he ain't had to do it like that and all that and that he should give him some more money." Morgan then clarified that the defendant told Sharkey, "he ain't had to do it like that and that he was supposed to give him more money."

Terry Garrett, assistant director of communications for the Shelby County Sheriff's Department at the time of the offense, identified a tape recording of the 911 call made from the T.G.I. Friday's restaurant during the early morning hours of January 28, 1995.

Retired Officer Leon Phil Drewery, Jr. of the Shelby County Sheriff's Department testified that he was one of the first officers to the scene of the T.G.I. Friday's shooting. Upon entry into the restaurant, Officer Drewery heard screaming coming from the back of the building where he ultimately found both victims on the floor in the office. Officer Drewery identified photographs of the crime scene and noted that when he surveyed the scene, he noticed that the back exterior door was partially propped open with a broom handle. Officer Drewery recalled that he recovered two bullet fragments that fell from Shea's body when he was being transported to the ambulance. Later that day, Officer Drewery took possession of the spent projectile removed from Frieling's body during autopsy.

Retired Officer Ronald Goodwin of the Shelby County Sheriff's Department testified that he was called to the scene during the early morning hours of January 28, 1995. Officer Goodwin prepared drawings of the crime scene and documented it by taking still photographs and video. Officer Goodwin noted that the door to the safe in the office was pushed closed but not locked. Officer Goodwin said that they ascertained that the robbers entered the restaurant through the back door entrance, which he explained was shielded from public view by a fence. Officer Goodwin discussed the ballistic-type items found at the scene and concluded that, based on the different types of shell casings and bullet fragments found in the office, the victims were shot in the office and there were at least two shooters.

Sergeant Paul Tremmel with the Memphis Police Department testified that a day or two after the incident, he received a call from a citizen who had found a wallet on the interstate just north of the Mall of Memphis. The wallet contained Preston Shea's driver's license but no cash.

Retired Officer Clyde Colston of the Memphis Police Department testified that he was involved in the investigation of this case. Four suspects were developed: Kevin Wilson, Franklin Howard, and Claude and Clashaun Sharkey. Howard was located, and a search of his residence revealed ski masks, dark gloves, and a revolver. The other suspects were also located and taken into custody. Based on information received from the co-defendants, the defendant was taken into custody and gave a statement to another officer.

Retired Officer Dwight Woods of the Memphis Police Department testified that he took a statement from the defendant. In his statement, the defendant admitted to assisting in the planning of the robbery. The defendant said that the others had mentioned robbing the restaurant and asked him questions about the establishment. The defendant told the others what time the restaurant closed and that they could gain entry after business hours when one of the employees took the trash out the back door. However, the defendant stated that he told them that he wanted nothing to do with the robbery and that he did not provide the information in exchange for some of the robbery proceeds. He said that he did not receive any of the proceeds. The defendant stated that when he talked to Claude Sharkey at the mall, he told Sharkey he wanted nothing to do with it.

Former Deputy Eddie Scallions of the Shelby County Sheriff's Department testified that he was the case officer in this case. Deputy Scallions stated that he talked to a T.G.I. Friday's employee who had worked that night, Derrick Jones, who relayed that he had seen a light-colored Parisienne automobile circling the parking lot when he left the restaurant shortly before the robbery. After a list of four suspects was developed, it was determined one of them drove a car matching the description given by Jones. When the car was located and stopped, one of the Sharkey brothers was among the occupants and a Lorcin .380 pistol was found in the car.

Special Agent Tommy Heflin with the Tennessee Bureau of Investigation testified as an expert in firearms identification that the two .380 shell casings found at the scene were fired from the recovered Lorcin pistol. Special Agent Heflin determined that the bullet recovered from the victim during autopsy was also fired from the Lorcin pistol.

Dr. Jerry Francisco, Shelby County Medical Examiner at the time of the incident, testified that he performed the autopsy of the victim and determined that the cause of death was a gunshot wound to the heart.

Raymond Schollmeyer, an employee of the T.G.I. Friday's Corporation, testified that he reviewed the restaurant's receipts from the night of the robbery and determined that approximately $5,400 had been stolen.

After the conclusion of the proof, the jury convicted the defendant as charged of murder during perpetration of a robbery and murder during perpetration of a burglary, which the court merged into one conviction at sentencing.

## ANALYSIS

The defendant challenges the sufficiency of the convicting evidence, arguing that there was insufficient proof from which a jury could determine that he was criminally responsible for felony murder. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is

insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

At the time of the offense, first degree felony murder was defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery [or] burglary[.]" Tenn. Code Ann. § 39-13-202(a)(2). However, the defendant does not challenge the proof related to the elements of the crimes; he only contends that there was no proof from which a jury could determine that he was criminally responsible for the crimes.

A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Id. § 39-11-402(2). "'[U]nder the theory of criminal responsibility, presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred.'" State v. Dorantes, __ S.W.3d __, 2011 WL 208306, at *13 (Tenn. 2011) (quoting State v. Phillips, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001)).

In the light most favorable to the State, the evidence shows that the defendant associated himself with the co-defendants before the crimes, when he informed them what time the restaurant closed and that they could gain access when the employees took the trash out the back door. In addition, the evidence shows that the defendant also associated himself with the co-defendants after the crimes, when he met them at the mall and had an encounter with Claude Sharkey in which the defendant "asked [Sharkey] about some money . . . told him he owed him some money[.]" According to Anthony Morgan, during the encounter, the defendant was acting like Sharkey "owed him some money so bad." When Sharkey gave the defendant fifty dollars, the defendant was not happy and told Sharkey "he ain't had to do it like that and that he was supposed to give him more money." From this evidence, a rational trier of fact could infer that the defendant gave information to the co-defendants as part of a coordinated plan to rob the restaurant and share in the proceeds of the robbery. The jury was within its province to discredit the self-serving averments in the defendant's statement to police that he told the co-defendants he wanted nothing to do with the robbery, did not tell them where the safe was located, and that he did not expect to and did not receive any of the money taken in the robbery. We conclude that the evidence was sufficient to show that the defendant, both, assisted in planning and promoting the robbery, and benefitted from the proceeds, such to sustain his convictions for the felony of murder of Gene Frieling.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial

court.

_____
ALAN E. GLENN, JUDGE